**WILSON et al. v. UNITED STATES.**

Nos. 8029, 8030.

Circuit Court of Appeals, Third Circuit.

Argued Dec. 7, 1942.

Decided May 18, 1943.

Jerome C. Strumpf, of Washington, D. C. (Francis M. Shea, Asst. Atty. Gen., Charles M. Phillips, U. S. Atty., of Trenton, N. J., W. Orvyl Schalick, Asst. U. S. Atty., of Camden, N. J., and Sidney J. Kaplan, Sp. Asst. to Atty. Gen., on the brief), for appellant.

Samuel T. French, of Camden, N. J. (Samuel T. French, Jr., and Howard L. Miller, both of Camden, N. J., on the brief), for appellee.

Before BIGGS, MARIS, and GOODRICH, Circuit Judges.

BIGGS, Circuit Judge.

These appeals may be considered in one opinion since they present substantially similar facts and may be disposed of by the application of the same principles of law. The complaints in both cases are founded upon Section 619 of the Tariff Act of 1930, Act of June 17, 1930, c. 497, Title IV, Section 619, 46 Stat. 758, 19 U. S.C.A. § 1619,[1] and the Tucker Act, Section 24(20) of the Judicial Code, 28 U.S.C.A. § 41(20).[2]

In the complaint at No. 8029 the plaintiffs allege that on May 21, 1933, they gave original information of a fraud on the customs revenue and a violation of the navigation laws to United States customs agents which resulted in the seizure and forfeiture of a speedboat, the Laura, with a cargo of liquor and in the imposition of fines on its crew. The plaintiffs assert and the United States admits that United States paid the plaintiffs the sum of $2,500 representing 25% of the appraised value of the liquor seized. The plaintiffs further allege that they were informed by the Treasury Department that the fines imposed upon the crew of the Laura " * * * had been subsequently declared to be for the violation of the Customs and Prohibition Laws and * * * as the violation of the Customs Laws had been combined with the Navigation laws or other similar statutes * * * " the fines were not imposed for violation of the customs laws

within the purview of Section 619. The plaintiffs allege that for these reasons the Treasury Department denied their claims for 25% of the fines collected. In its answer the United States admits that the Treasury Department refused to pay further compensation to the plaintiffs because "there was no recovery incurred under the customs laws * * *." The plaintiffs contend that they are entitled also to 25% of the appraised value of the Laura.

In the complaint at No. 8030 the plaintiffs allege that they gave original information to United States customs agents resulting in the seizure and forfeiture of certain liquor for violation of the "Customs and Navigation Laws of the United States" which led to the seizure and forfeiture of liquor appraised at $50,540. They allege that they have received payments totalling $1,822 from the United States as a partial payment of the 25% of the appraised value of the liquor seized. They then allege that the Treasury Department informed them that further compensation was refused them because " * * * the balance of the liquor covered by this seizure had been subsequently forfeited under an Internal Revenue Law and that in view of the decision of the Comptroller General of the United States, holding that proceeds from the forfeitures in cases where allegations of violations of the Navigation or similar statutes are combined with violations of the Customs Laws that they are not recoveries under the Customs Laws within the meaning of Sec. 619 * * *." The United States asserts in its answer that the Treasury Department denied the plaintiffs' claim for additional compensation because "the recovery from the seizure * * * was not in-

[1] Section 619 of the Tariff Act of 1930 provides: "Any person not an officer of the United States who detects and seizes any vessel, vehicle, merchandise, or baggage subject to seizure and forfeiture under the customs laws, and who reports the same to an officer of the customs, or who furnishes to a district attorney, to the Secretary of the Treasury, or to any customs officer original information concerning any fraud upon the customs revenue, or a violation of the customs laws perpetrated or contemplated, which detection and seizure or information leads to a recovery of any duties withheld, or of any fine, penalty, or forfeiture incurred, may be awarded and paid by the Secretary of the Treasury a compensation of 25 per centum of the net amount recovered, but not to exceed $50,000 in any case, which shall be paid out of any appropriations available for the collection of the revenue from customs. For the purposes of this section, an amount recovered under a bail bond shall be deemed a recovery of a fine incurred."

[2] The pertinent part of the Tucker Act granting original jurisdiction to the District Courts of the United States is as follows: "Concurrent with the Court of Claims, of all claims not exceeding $10,-000 founded upon the Constitution of the United States or any law of Congress, or upon any regulation of an executive department, or upon any contract, express or implied, with the Government of the United States, * * *."

curred under the customs laws within the meaning of Section 619 \* \* \*." The plaintiffs claim that $10,000 remains due to them.

Neither complaint alleges that the Secretary of the Treasury made an award or awards in respect to the additional compensation sought by the plaintiffs.

The answers admit that original information was given by the plaintiffs which information resulted in the seizure of the Laura, of the cargoes of liquor and the imposition of the fines collected by the United States. The answers deny liability on the part of the United States to pay compensation to the informers and in separate affirmative defenses the United States moves to strike out the complaints on the ground that they do not state good causes of actions.

The two cases were tried together to the court without juries. Judgments were rendered for the plaintiffs. The United States has appealed.

The first defense asserted by the United States to both suits is that the Secretary of the Treasury under Section 619 of the Tariff Act of 1930 may in his absolute discretion grant or withhold compensation to informers and since the Secretary has not seen fit to make awards to the plaintiffs, the court below was without jurisdiction to entertain the suits under the Tucker Act. The plaintiffs in effect concede that if they do not have a right to compensation, that is to say if the making of awards by the Secretary of the Treasury and the payment by him of compensation to them rests within the absolute discretion of that executive officer, the court below was without jurisdiction under the Tucker Act to entertain the suits.

The first question which we must determine therefore is whether Section 619 vests in the Secretary of the Treasury an absolute discretion to award or deny compensation to informers. If Section 619 is to be so construed the suits must be dismissed.

Provisions somewhat like those of Section 619 are to be found in Section 4 of the Act of June 22, 1874, 18 Stat. 186. This is the earliest appearance of an informers statute of this character in the federal acts. Section 4 provided in part: "That whenever any officer of the customs or other person shall detect and seize goods, wares, or merchandise, in the act of being smuggled, or which have been smuggled, he shall be entitled to such compensation therefor as the Secretary of the Treasury shall award \* \* \*." That portion of Section 4 that dealt with awards to informers was couched in permissive language substantially similar to that employed in Section 619; viz., "And whenever any person not an officer of the United States shall furnish to a district attorney \* \* \* information \* \* \* which shall lead to the recovery of any duties withheld, \* \* \* such compensation may \* \* \* be paid [under the direction of the Secretary of the Treasury] to such persons \* \* \* as shall be just and reasonable \* \* \*". The contrast between the mandatory and permissive words of the statute, the mandatory words being applicable to awards to be made by the Secretary of the Treasury to officers of the United States, and the permissive words being applicable to compensation to be paid to informers, might have afforded help in construing Section 619 were it not for the provisions of Section 6 of the Act of June 22, 1874. Section 6 provided that in any case where judicial proceedings have been instituted, the informer should establish his claim to compensation to the satisfaction of the court or judge having cognizance of such proceeding. It goes on to provide that when any fine or penalty or forfeiture is collected without judicial proceedings, "\* \* \* the Secretary of the Treasury shall, before directing payment to any person claiming such compensation, require satisfactory proof that such person is justly entitled thereto." The language of Section 6 indicated that the Secretary of the Treasury was to perform at least a semi-judicial function since he was to require satisfactory proof of the claimant's compliance with the statute. Compare, however, the decision of the Circuit Court of Appeals for the Second Circuit in Re Ghazal, 174 F. 809, construing the 1874 Act which held that that statute made the Secretary of the Treasury the "\* \* \* sole judge as to whether there is an informer who is entitled to a share under \* \* \* (Section 4). Until he acts the informer has merely an expectation of reward." Supra, at page 811 of 174 F. The Circuit Court of Appeals for the Second Circuit also cited the decision of the Court of Claims in Ramsey v. United States, 14 Ct.Cl. 367, which takes the same point of view. See Id., page 373 of 14 Ct.Cl.

The legislative history of Section 619 affords no help in interpreting this aspect of it; nor does the legislative history of its predecessor acts or of the Tariff Act Amendments of 1935, Act of August 5, 1935, c. 438, Title III, Section 305, 49 Stat. 527, 19 U.S.C.A. § 1619, throw light upon the subject. We must therefore find the legislative intent from an examination of Section 619 itself.

Section 619 provides for a qui tam action for the benefit of an informer. The policy of Congress in passing it and its predecessor acts was to protect the custom revenues of the United States. A substantial portion, 25 percent, of the moneys received by the United States by reason of original information given by the informer, "may" be awarded and paid to the informer. An informer would have little incentive to give original information upon occasions at considerable personal risk to officers of the United States if his compensation rested in the absolute discretion, almost, one might say, in the whim, of an executive officer. Indeed the strongest point which the Government can assert in this phase of its argument is the fact that the statute uses the word "may" instead of the word "shall". The duty in the case at bar is one imposed upon a public officer. As a matter of law the word "may", ordinarily permissive in quality, may be given a mandatory meaning. This was well put by the Court in Banc of Delaware in DuPont v. Mills, 9 W.W.Harr. 42, 51, 196 A. 168, 173, 119 A.L.R. 174, wherein it was stated, "But, the word 'may', ordinarily permissive in quality, is frequently given a ·mandatory meaning * * * where a public body or officer is clothed by statute with power to do an act which concerns the public interest, or the rights of third persons. In such cases, what they are empowered to do for the sake of justice, or the public welfare, the law requires shall be done. The language, although permissive in form, is, in fact peremptory." Supervisors of Rock Island County v. United States, 4 Wall. 435, 18 L.Ed. 419; Mayor of New York v. Furze, 3 Hill, N.Y., 612; Vason v. City of Augusta, 38 Ga. 542, 545; Seaboard Air Line Ry. Co. v. Wells, 100 Fla. 1027, 1041, 130 So. 587, 593; State ex rel. Cashman v. Carmean, 138 Neb. 819, 295 N.W. 801. See State ex rel. Foulger v. Layton, Del. Super., 8 W.W.Harr. 556, 563, 194 A. 886, 889.

There are other reasons why we must conclude that the word "may" was used by Congress in Section 619 in a mandatory sense. The statute contemplates the making of an award to an informer; that is to say, in the language of the Act, the informer "may be awarded and paid * * * a compensation" by the Secretary of the Treasury. An award or the making of an award requires the exercise of judgment and implies that that exercise of judgment shall be by a tribunal, using the word "tribunal" in a broad sense. The word "award" is frequently used to designate the considered judgment of arbitrators acting under arbitration agreements. The word is employed also to designate the judgments of other quasi-administrative quasi-judicial tribunals. For example, many of the Workmen's Compensation Acts authorize Industrial Accident Boards or Commissions to make "awards" of "compensation". An award of compensation ordinarily does not rest within the whim of the tribunal authorized to make it. The word "award" connotes, in our opinion, the exercise of reasoned, considered judgment based upon established rules of law. The word "compensation" connotes equivalency; a quid pro quo, a payment for services rendered. Kerstetter v. Elfman, 327 Pa. 17, 192 A. 663. Compensation is rarely, if ever, based on the absolute discretion of an administrative or an executive officer.

We think that in enacting Section 619 Congress intended the Secretary of the Treasury to make an award and pay compensation to an informer who gave valuable original information to the United States. There is therefore an implied contract within the meaning of the Tucker Act between the United States and the informer who brings himself within the purview of Section 619. As was stated by Mr. Justice Stone in Dismuke v. United States, 297 U.S. 167, 172, 56 S.Ct. 400, 403, 80 L. Ed. 561, the United States is not bound to provide a remedy in the courts because it has created claims against itself, but " * * * in the absence of compelling language, resort to the courts to assert a right which the statute creates will be deemed to be curtailed only so far as authority to decide is given to the administrative officer." In Tyson v. United States, 32 F. Supp. 135, page 137, 91 Ct.Cl. 139, the Court of Claims reached a conclusion similar to that which we have expressed

in respect to the construction of Section 619, stating, "In our view it was the intent of Congress that the Secretary should have exclusive jurisdiction only to determine disputed questions of fact, and that, as in other administrative matters, his decision upon questions of law should be reviewable by the courts."[3]

As an additional defense the United States asserts the plaintiffs should have proceeded by way of petitions for mandamus to compel the Secretary of the Treasury to make awards and that in the absence of such awards the suits cannot be maintained under the Tucker Act. In United States v. McLean, 95 U.S. 750, 753, 24 L.Ed. 579, a question analogous to that at bar was raised and the Supreme Court held that if an executive officer failed to do his duty he might be constrained to perform it by mandamus and that the courts could not perform executive duties or treat them as performed when they have been neglected. See also United States v. Crosthwaite, 168 U.S. 375, 18 S.Ct. 107, 42 L.Ed. 507. The answer to this question is suggested by the decision of the Supreme Court in the Dismuke case. See 297 U.S. at page 173, 56 S.Ct. 400, 80 L.Ed. 561. In the cited case, which arose under the Civil Service Retirement Act of June 16, 1933, 48 Stat. 283, 305, 5 U.S.C.A. § 692d, now 5 U.S.C.A. § 736a, the Supreme Court held that jurisdiction of suits for annuities payable under the Act were within the jurisdiction of the district courts under the Tucker Act. In the Dismuke case as in the case at bar the decision of the administrative officer turned squarely upon a question of law. Though the statute in the Dismuke case provides that the employee "shall be" entitled to an annuity payable from a specified fund, and is not pari materia with Section 619, the decision of the Supreme Court in the Dismuke case is persuasive in the case at bar. We think that the plaintiffs were not compelled to resort to petitions for mandamus to require the Secretary to do that which he was required to do by law.

We have devoted so much of this opinion to these defenses asserted by the United States because we consider the cases at bar to be of prime importance. It should be observed, however, that the Secretary of the Treasury based his conclusion that the plaintiffs should not be awarded additional compensation upon a much narrower interpretation of the statute than that which is asserted by counsel for the United States on its behalf. The Secretary of the Treasury concluded merely that because in his judgment, as a matter of law, the information furnished by the plaintiffs did not lead to seizure or recovery of fines under the customs laws of the United States, the plaintiffs were not entitled to compensation. Was his decision correct? This brings us to a consideration of the Secretary's legal grounds and of the basis of the conclusions expressed by the court below.

Section 619 provides that if original information be furnished to certain officers of the United States of a fraud upon or a violation of the customs laws which leads " * * * to a recovery of any duties withheld, or of any fine, penalty, or forfeiture incurred" then the informer may be awarded and paid 25 percent "of the net amount recovered" which shall be paid out of any appropriations available for the collection of the revenue from customs. In No. 8030 only one cause of forfeiture was alleged in the libel and that arose under Section 3450 of the Revised Statutes, 26 U.S.C.A. Int.Rev.Code, §§ 2807, 3321. The section cited is an internal revenue law and is unrelated to the customs laws. See General Motors Acceptance Corp. v. United States, 286 U.S. 49, 60, 52 S.Ct. 468, 76 L.Ed. 971, 82 A.L.R. 600. Section 619, as it was in the Tariff Act of 1930, provided for payment to the informer of an award which lead to the recovery of any duties withheld. Obviously if the seizure and forfeiture were made under the internal revenue laws of the United States they were not made under the customs laws. The interpretation put upon the statute by the Secretary of the Treasury in this respect was correct. Accordingly the judgment at No. 8030 will be reversed.

A more difficult question is presented in No. 8029. As to the power boat Laura, the libel alleges five causes of forfeiture. Causes of forfeiture were alleged under the internal revenue laws of the United States, under the navigation laws of the United States, and under the customs laws of the United States, specifically under Sections 593(b) and 594 of the Tariff Act of 1930, 19 U.S.C.A. §§ 1593 (b), 1594. The court simply decreed for-

---

[3] Compare the earlier decision of the Court of Claims in Ramsey v. United States, supra.

feiture and that the "libel be and the same is hereby taken pro confesso". There is no particularization of the cause of forfeiture. It appears, however, that thereafter by order of the court the Laura was transferred to the United States Coast Guard. It is obvious therefore that no "net amount" was recovered by the United States from the Laura and that the plaintiffs cannot recover 25 percent of her appraised value. Other questions would arise had the amendments to Section 619, effected by the Act of August 5, 1935, c. 438, Title III, Section 305, 49 Stat. 527, 19 U.S.C.A. § 1619,[4] been in force at the time of the transfer. These questions need not be discussed in respect to the forfeiture of the Laura. We conclude therefore that the Secretary of the Treasury committed no error of law in determining that the plaintiffs were not entitled to any award based upon the appraised value of the Laura.

The plaintiffs allege also in No. 8029 that as a result of the information given by them which resulted in the seizure and forfeiture of the Laura, "The United States Government, through the Treasury Department, Bureau of Customs, collected from persons arrested in connection with the said seizure, the sum of $3,000 in fines and penalties." The United States admits in its answer that " * * * it collected from the persons arrested in connection with the said seizure, which resulted from the information obtained from the plaintiffs, the sum of $3,000 in fines and penalties, which amount was credited to a receipt account in the Treasury of the United States, entitled '2530, Fines and Penalties—National Prohibition Act' ". The District Judge found, "That plaintiffs furnished original information to a customs officer upon which the boat aforesaid [the Laura] with the liquor aforesaid was seized, and upon which seizure, certain persons aboard the boat were arrested and fined in the total sum of $3,000; * * *. That the boat and liquor were seized and the fines imposed as a result of violations of the customs laws of the United States." Assuming that these findings constitute an express finding by the District Court that the fines imposed on the persons on board the Laura were imposed by reason of a fraud upon the customs revenue or because of violation of the customs laws perpetrated or contemplated by these persons, there is no evidence upon which such a finding can be predicated. The plaintiffs offered no direct evidence as to the nature of the proceedings against the men who were fined. Haldeman's testimony upon this point is set out in the footnote.[5] In a letter written by the Commissioner of Customs, put in evidence by the plaintiffs, it is stated that the fines totaling $3,000 " * * * imposed on various defendants arrested in the Gas Screw Laura case, were assessed for violations of the customs and prohibition laws." The Commissioner went on to say, "In view of the decision of the Comptroller General of the United States (7 Comp.Gen. 337, relating to the forfeiture of the gas screw Manito II), holding that proceeds from the forfeitures or fines in cases where allegations of violations of the navigation or similar statutes are combined with allegations charging violations of the customs laws are not recoveries under the customs laws within the meaning of section 619, the informers' claims for compensation in connection with the fines recovered were denied."

The decision of the Comptroller General referred to does not support the position of the Commissioner of Customs in the case at bar for it appears quite clearly (7 Comp.Gen. 337) that the gas screw Manito II was forfeited under the naviga-

---

4 A portion of the statute as amended provides "If any vessel * * * is forfeited to the United States, and is thereafter, in lieu of sale * * * delivered to any governmental agency for official use, compensation of 25 per centum of the appraised value thereof may be awarded and paid by the Secretary of the Treasury * * *."

5 The plaintiff, Haldeman, testified as follows:

"Q. As a result of [the] seizure [of the Laura] were some of the men fined? A. There were three men I believe, that were fined $1000.00 apiece.

"Q. The total fines as a result of information given to government for violation of these custom laws were fines totaling $3000.00? A. I believe that was.

* * * * *

"Q. These men were likewise seized under the same official designated seizure for violating the custom laws? A. I believe so.

"Q. Do you know what they were fined for, what law was violated?

"The Court: That is, do you know? A. I don't know."

No record of proceedings against the men who were fined was put in evidence.

tion laws and not under the customs laws of the United States. No question respecting fines imposed upon individuals was dealt with by the Comptroller General in his decision. A vessel may be forfeited on the combined allegations of a libel which may charge violations of more than one law. On the other hand a fine is imposed on an individual because he has been found guilty of a violation of a particular law. In other words a fine must be attributable always to a specific offense of which an individual has been found guilty.

 It follows that the letter of the Commission of Customs supplies no evidence upon which we may decide that the charges on which the members of the Laura's crew were fined were based on the customs laws. From the letter it appears that the members of the Laura's crew were charged with violations of the customs laws and with violations of the prohibition laws as well. We must assume, however, that the fines were imposed in accordance with law and that the individuals were found guilty on a specific charge or on specific charges. From the record before us it is impossible to determine the nature of the charges upon which the fines were imposed. The individuals may have been fined because they violated the customs laws or because they violated the prohibition laws. They may have been found guilty of a charge of violating the customs laws and may also have been found guilty of a charge of violating the prohibition laws. We can only guess as to these things. In our opinion Section 619 must be so construed as to provide that an informer may receive an award payable from fines only when these fines have been imposed for violation of the customs laws. It follows that the plaintiffs are entitled to informers' compensation only if they prove that the fines collected were imposed because of "a violation of the customs laws perpetrated or contemplated". This they have failed to do. Accordingly the judgment at No. 8029 is reversed.