In the Matter of CHARLES R. STISSER, Appellant, v. PETER F. ROAN, as City Manager of the City of Schenectady, Respondent.

Third Department, July 15, 1966.

*Lambert L. Ginsberg* for appellant.

*Adam F. Ciesinski, Corporation Counsel (Leonard J. Litz* of counsel), for respondent.

STALEY, JR., J. This is an appeal from an order denying petitioner's application for a judgment directing a hearing of certain charges against two police officers of the City of Schenectady.

On April 30, 1964, the petitioner forwarded a letter to the respondent charging that on January 14, 1964, he was assaulted by a police officer of the City of Schenectady, arrested and booked at Police Headquarters, held for about three-quarters of an hour in jail and deprived of spiritual counsel and assistance.

On June 17, 1964, the respondent replied stating he had investigated the charges, had been advised by the petitioner's attorney that petitioner wished to have the matter entirely dropped, and that petitioner had filed a release and waiver of all charges. The respondent denied the request for a hearing.

It is conceded that the City Manager of the City of Schenectady performs the duties of the office of Commissioner of Public Safety. The sole issue involved on this appeal is the construction of section 137 of the Second Class Cities Law which provides in part as follows: " If a charge may be made by any person against any officer or member of the police or fire departments that he has been negligent or derelict in the performance of his official duties, or is incompetent or without capacity to perform the same or is guilty of some delinquency seriously affecting his general character or fitness for the office, the charge must be in writing, in the form prescribed by the rules and regulations of the commissioner of public safety, and a copy thereof must be served upon the accused officer or member. The commissioner shall then proceed to hear, try and determine the charge."

Appellant contends that the sentence in section 137 that states " The commissioner shall then proceed to hear, try and determine the charge ", imposes a mandate upon the Commissioner to hold a hearing in every instance where a charge is filed against any officer or member of the Police Department.

In the interpretation of the intent of section 137, that section must be construed in conjunction with sections 131 and 133 of the Second Class Cities Law.

Section 131 provides that the Commissioner of Public Safety shall have jurisdiction, supervision and control of the discipline of the Police Department.

Section 133 provides that the Commissioner shall make, adopt and enforce reasonable rules, orders and regulations for the discipline of the Police Department and for the hearing, investigation, trial and determination of charges made against any officer or member of the Police Department and may, in his discretion, punish any such officer or member found guilty thereof.

At the time the charges herein were filed with the City Manager, the rules governing the procedure to be followed in making a complaint either by a private citizen or an officer relative to the conduct of an officer or member of the Police Department were as follows:

"Section 47. If the charges and specifications are recommended for trial by the City Manager, a date shall be set for trial.

"Section 48. When a complaint is made by a civilian * * * the City Manager shall indicate whether or not charges and specifications are to be prepared against the member of the department complained against."

It is evident that when the above sections of the Second Class Cities Law and the rules promulgated pursuant thereto are considered together, the legislative intent in adopting section 137 was to permit a hearing only if the City Manager, in his discretion, recommends the filing of charges and specifications for trial against the member of the department complained against. Pursuant to section 137, any citizen has a right to make a complaint against an officer or member of the Police Department if the officer has been negligent or derelict in the performance of his official duties.

The petitioner exercised this right by filing his complaints and that is the only right given to him under section 137 and there are no further rights or privileges afforded to him. In addition, there is no evidence to show that the decision on the part of the City Manager in the denial of the request for a hearing was arbitrary or capricious.

The order should be affirmed.

HERLIHY, J. P (dissenting). The majority are determining as to section 137 of the Second Class Cities Law that the sentence "The commissioner shall then proceed to hear, try and

determine the charge " is advisory, or gives the City Manager the right, in his discretion, to determine whether or not " to hear, try and determine the charge ". It is contended that the section must be read in conjunction with sections 131 and 133 of the same law and with rules and regulations then in effect as to the procedure following the filing of a complaint. We are constrained to disagree.

Section 131, aside from outlining the authority of the Commissioner, is of no consequence as to the present problem. Section 133 imposes upon the Commissioner the authority to make reasonable rules, orders and regulations, not inconsistent with law, among them being procedures for the hearing, trial and determination of charges against members of the Police Department and including punishment in the event of a finding of guilt.

Section 137, which follows these procedural sections, is captioned " Discipline " and as pertinent hereto states: " If a charge *may* be made by any person " against a member of the Police Department " the commissioner *shall* then proceed to hear, try and determine the charge ". Thereafter it provides: " If the accused *shall* be found guilty of the charge made against him, the commissioner *may* punish him ". (Emphasis supplied.)

The use in the statute of the words " shall " and " may " makes it apparent that the Legislature was aware of their contrasting meanings. (*Matter of New York Cent. R. R. Co.* v. *Donnelly,* 8 A D 2d 65.)

As to the rules adopted by the Commissioner, it will suffice to note that such rules cannot change or amend the clear reading of the statute nor may the statute be diluted by the exercise of the rule-making power pursuant to said sections 131 and 133.

In statutory construction, consideration is given to the dictionary in seeking to determine the meaning of words. (See McKinney's Cons. Laws of N. Y., Book 1, Statutes, § 234, for a comprehensive and detailed analysis of the words " may " and " shall "; Black's Law Dictionary [3d ed.], pp. 1171, 1616.)

A statute of this kind and the words contained therein should be interpreted, if possible, in the meaning and effect allocated thereto by the common speech of men.

The word " shall ", as used in a statute, is generally imperative or mandatory and this is absolute when a private right or a public interest is dependent on it. Such an interpretation in regard to a statute where the word " shall " could have been read as equivalent to the word " may " was made in the early history of this State. In *Mayor* v. *Furze* (3 Hill 612, 615) decided 1842, the court stated: " ' Where a statute directs the doing of a thing for the sake of justice, or the public good, the

word *may* is the same as the word *shall.'* " (See, also, *Hutson v. City of New York,* 9 N. Y. 163, 168; *Hagadorn* v. *Raux,* 72 N. Y. 583, 586; *Matter of Hudson-Harlem Val. Title & Mtge. Co.* v. *White,* 256 App. Div. 393, 395.)

The rule has likewise been recognized by the Federal courts. (See *Wilson* v. *United States,* 135 F. 2d 1005, 1009.)

Certain it must be that if such meaning is given to the word " may " when a statute employs the word " shall ", the intent of the Legislature was to make the act of the Commissioner mandatory under this statute.

Such statutory construction requires a holding that upon the filing of the complaint, in accordance with the directive of the statute, the wording that " the commissioner *shall* then proceed to hear, try and determine the charge " [emphasis supplied] is mandatory and accordingly, the order should be reversed.

We do not pass on the issue as to whether the acts of the petitioner and his attorney were such as to lead the Commissioner to believe that the petitioner intended not to press the charges, nor do we reach the merits of the controversy.

The order should be reversed, on the law and the facts.

REYNOLDS and AULISI, JJ., concur with STALEY, JR., J.; HERLIHY, J. P., dissents and votes to reverse, in an opinion, in which TAYLOR, J., concurs.

Order affirmed, without costs.