Thomas TAYLOR, Appellant,

v.

UNITED STATES of America, Appellee.

No. 76–1235.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 8, 1976.

Decided March 3, 1977.

Calvin W. Breit, Norfolk, Va. (Breit, Rutter & Montagna, Norfolk, Va., on brief), for appellant.

Michael Anton Lubin, Atty., U. S. Customs Service, Dept. of the Treasury, Washington, D. C. (Ronald A. Margolis, Atty., U. S. Customs Service, Dept. of the Treasury, Washington, D. C., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and WINTER and WIDENER, Circuit Judges.

WINTER, Circuit Judge:

Thomas Taylor appeals from the district court's judgment which denied him an informer's fee of twenty-five percent of the street value of hashish seized by federal officers pursuant to a tip provided by Taylor. Taylor claims such a fee pursuant to 19 U.S.C. § 1619 (1970), as made applicable by 21 U.S.C. §§ 881(d) and (f) and 965 (1970). We affirm, but remand for further proceedings since, as we view the law, Taylor may be entitled to an informer's fee computed on a different basis.

## I.

Taylor, a merchant seaman aboard a vessel bound for the United States from Amsterdam, discovered thirty-three pounds of hashish in the back of a stereo speaker that he had agreed to list on his customs declaration for Brown, a fellow seaman. Brown had in turn agreed to transport the speaker and certain other articles for a man he had met in Amsterdam. Taylor reported the discovery to the ship's master, who took custody of the hashish and the speaker, as well as three switchblades, another speaker, and a radio receiver, and reported the find to customs officials. When the ship docked at New Orleans, a customs officer and special agents of the Drug Enforcement Administration (DEA) boarded the vessel and seized the hashish and equipment. Under the authority of 21 U.S.C. § 886, Taylor and his fellow seaman were paid $150 for their services by DEA, but further demands for payment made to the United States Attorney, the Secretary of the Treasury and the United States Customs Office were rejected. Taylor, acting on his own behalf, filed suit seeking further recovery. The district court awarded an informer's fee for the speakers and other goods transported equal to twenty-five percent of their value as established by a customs official, but allowed no informer's fee for the hashish on the ground that it could not legally be valued at its street value and plaintiff offered no other evidence of value. Taylor appeals, alleging that there should have been an award of twenty-five percent of the street value of the hashish.

## II.

Resolution of this case ultimately turns on the meaning of 19 U.S.C. § 1619,[1] to the extent that it is applicable. Our inquiry into the application of that provision to this case must begin with the Controlled Sub-

---

1. Any person not an officer of the United States who detects and seizes any . . . merchandise, or baggage subject to seizure and forfeiture under the customs laws or the navigation laws, and who reports the same to an officer of the customs, or who furnished to a United States attorney, to the Secretary of the Treasury, or to any customs officer original information concerning any fraud upon the customs revenue, or a violation of the customs laws or the navigation laws, perpetrated or contemplated, which detection and seizure or information leads to a . . . forfeiture . . ., may be awarded and paid by the Secretary of the Treasury a compensation of 25 per centum of the net amount recovered, but not to exceed $50,000 in any case, which shall be paid out of any appropriations available for the collection of the revenue from customs. . . . If any . . . merchandise . . . or baggage is forfeited to the United States, and is thereafter, in lieu of sale, destroyed under the customs or navigation laws or delivered to any governmental agency for official use, compensation of 25 per centum of the appraised value thereof may be awarded and paid by the Secretary of the Treasury under the provisions of this section, but not to exceed $50,000 in any case.

stances Act. Hashish, a marihuana derivative, is a schedule I controlled substance. 21 U.S.C. § 802(15) (1970); 21 U.S.C. § 812(c) Sched. I(c)(10) (1970); and 21 C.F.R. § 1308.11(d) (1975). A schedule I substance is defined to be a drug or other substance that has a high potential for abuse, has no currently accepted medical use in treatment in the United States, and for which there is a lack of accepted safety for use under medical supervision. 21 U.S.C. § 812(b)(1). Unless the Attorney General finds the importation of such a substance to be necessary for medical, scientific, or other legitimate needs of the United States at a time when domestic sources or domestic competition are inadequate and the Administrator of the Drug Enforcement Administration issues a permit, such a substance may not be legally imported. 21 U.S.C. § 952(a) (1970); 21 C.F.R. § 1312.13 (1975).

All controlled substances are subject to forfeiture if acquired or manufactured in violation of the Act, and forfeiture will extend to other conveyances and equipment used to make or transport the substances. 21 U.S.C. § 881(a)(2), (3) and (4) (1970). If a schedule I substance is transferred, possessed, or offered for sale in violation of the Act, it is subject to *summary* seizure and forfeiture. 21 U.S.C. § 881(f) (1970). Section 881(d) states the law applicable to property seized under § 881:

> All provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws; the disposition of such property or the proceeds from the sale thereof; the remission or mitigation of such forfeitures; and the compromise of claims and the award of compensation to informers in respect of such forfeitures shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under the provisions of this subchapter, insofar as applicable and not inconsistent with the provisions hereof; except that such duties as are imposed upon the customs officer or any other person with respect to the seizure and forfeiture of property under the customs laws shall be performed with respect to seizures and forfeitures of property under this subchapter by such officers, agents, or other persons as may be authorized or designated for that purpose by the Attorney General, except to the extent that such duties arise from seizures and forfeitures effected by any customs officer.

The effect of § 881(d) was described in *United States v. One Motor Yacht Named Mercury*, 527 F.2d 1112, 1114 (1 Cir. 1975): "[f]orfeiture proceedings arising out of drug offenses are governed by the same statutory provisions as apply to customs forfeitures."

Section 881(e) of Title 21 deals with property forfeited pursuant to the Act and provides that the Attorney General may retain the property for official use, may sell the property if it is not *required to be destroyed by law and is not harmful to the public*, may require General Services Administration to take custody of the property, or may forward it to DEA (previously the Bureau of Narcotics and Dangerous Drugs) for disposition, including delivery for medical or scientific use. Since by definition a schedule I substance is harmful, it cannot be sold nor could it be retained for use, but presumably it will be forwarded to GSA or DEA for destruction or will be turned over to agencies for research. *See* Newsweek, Nov. 8, 1976, at p. 53 (approval of application by University for research in medical use of marihuana for treatment of glaucoma; drugs to be supplied by National Institute on Drug Abuse).

### III.

Plaintiff asserted his cause of action was pursuant to 19 U.S.C. § 1619 (1970) and the trial judge, over objections by the government which claimed § 1619 did not apply, decided the case on that basis. Somewhat inarticulately, the government continues to assert that position before us. We agree with the government that § 1619 as such does not apply to the instant case. Instead, the case must be decided under Title 21, although, as we shall show, important pro-

visions of § 1619 are incorporated into Title 21 and made applicable to proceedings under Title 21.

◼ Sections 881(d) and 965 of Title 21 make customs procedures applicable to the Controlled Substances Act and the Import and Export Controlled Substances Act by incorporating portions of Title 19, such as §§ 1602 through 1621, into Title 21 *insofar as applicable and to the extent not inconsistent.*[2] The text of the Title 21 analogue then delimits one clear amendment to the Title 19 text by stating that DEA officers shall perform the duties for seizures and forfeitures under Title 21 except when customs officers make the seizure. Yet, even in those instances where customs officers still make the seizure, they act, not under Title 19 but under Title 21.[3] The statutory scheme clearly suggests then that seizures and forfeiture proceedings involving drugs are governed by Title 21 even though the basic authority to proceed is supplied by Title 19 and the seizure is carried out by customs officers.

◼ Since Title 21 provides a remedy and a procedure dealing with this case, we think that the informer's fee provision of that Title must be used to determine whether a fee should be paid in this case for the drugs seized. In concluding so, we do not intimate that all seizure cases involving drugs must be determined under Title 21, but we think the wiser course will usually be to do so. By doing so, dangers of duplicitous claims under Title 19 and Title 21 will be avoided, and the courts will have the advantage of the expertise of the agency most concerned with controlled substances (DEA), and most able to present informa-

tion concerning the appropriate value to be placed on such substances.

Pursuant to Reorganization Plan No. 2 of 1973, 38 Fed.Reg. 15,932, 87 Stat. 1091 (1973), *as amended,* Pub.L. 93–253, § 1, 88 Stat. 50 (1974), *reprinted in* 5 U.S.C. app., at 79 (1970), DEA was created with the express purpose of creating a central organization within the Department of Justice to deal with law enforcement in illicit drug activities.[4] The Department of the Treasury retained its function of seizing illicit narcotics at the border provided "that any illicit narcotics, dangerous drugs, marihuana, or related evidence seized . . . by the Secretary . . . shall be turned over forthwith to the jurisdiction of the Attorney General." Thus, Treasury retained its powers of inspection of goods at the border, but those powers were to be exercised to insure the proper operation of DEA, the organization that after the reorganization is to dispose of the drugs. 21 U.S.C. § 881(f) (1970). In combination with the text of 21 U.S.C. § 881(d), these two concerns indicate that as a general matter Title 21 should control judicial action involving drug seizures at the border.

◼ While the two concerns expressed heretofore apply to any seizure or forfeiture involving drugs, the facts and circumstances of this case, involving as it does a claim for an informer's fee arising out of a seizure for drugs, even more clearly indicate that Title 21 and not Title 19 must control. This case does not involve a violation of the customs laws such as failure to manifest drugs, 19 U.S.C. § 1584 (1970), or to pay a valid duty, but instead involves seizure by customs officers [and DEA offi-

---

2. *See* H.R.Rep.No.91–1444, 91st Cong., 2d Sess., *reprinted in* [1970] U.S.Code Cong. & Admin.News, pp. 4567, 4624 ("Subsection (d) of this section provides that forfeiture proceedings shall be in accord with the provisions of existing U.S. customs law."); 4646 (functions of the Attorney General in Title II apply to Title III as do administrative and judicial proceedings and violations); *see generally United States v. One 1970 Pontiac GTO,* 529 F.2d 65 (9 Cir. 1976) (per curiam) (connection between 21 U.S.C. § 881 and 19 U.S.C. § 1615).

3. *See* text of § 881(d), supra, in text. *Cf. United States v. Ledesma,* 499 F.2d 36 (9 Cir.) (customs officers act pursuant to 21 U.S.C. § 881(a)(3) ), *cert. denied sub nom. Quiroz-Santi v. United States,* 419 U.S. 1024, 95 S.Ct. 501, 42 L.Ed.2d 298 (1974).

4. *See* Exec.Order No. 11727, 38 Fed.Reg. 18,357 (1973), *reprinted in* [1973] U.S.Code Cong. & Admin.News, pp. 3504–05 (Attorney General to coordinate all activities of executive branch dealing with enforcement of laws respecting dangerous drugs).

cers] pursuant to a statutory mandate requiring seizure of merchandise "unlawfully introduced" into the United States.[5] 19 U.S.C. § 482 (1970); 19 C.F.R. § 12.36 (1975); 19 C.F.R. § 162.61 (1975). The drugs were seized, then, by officers acting to enforce the drug law's prohibition against importation, and not to enforce an independent rule of the customs law. Moreover, DEA officers accompanied the customs officer to the seizure and the report of seizure indicated it had occurred pursuant to 21 U.S.C. § 952. Under these facts, even if the district court could find that the seizure was pursuant to both laws,[6] where the government has denied the seizure was pursuant to the customs law, the forfeiture must be construed as occurring under the drug laws and there can be no recovery of fees under the customs law. *Wilson v. United States,* 135 F.2d 1005, 1010 (3 Cir. 1943).[7]

Finally, the provisions of 19 U.S.C. § 1619, by its terms, do not directly apply to informer's fees for drugs, since (a) the drug may not be sold for use since it is a schedule I substance, (b) it will not be destroyed "under the customs laws or navigation laws" but under the drug laws,[8] and (c) it will be transferred to a governmental agency pursuant to § 881(f) of Title 21 and not the customs law. In sum, then, we conclude that the customs law's informer fee

provision does not apply to this case while the drug law's provision does.

**IV.**

■■■ Since we conclude that plaintiff's cause of action is one governed by Title 21, the regulations promulgated by DEA are directly applicable.[9] After most controlled substances are seized pursuant to Title 21, they must be appraised as required by the Title 21 analogue of 19 U.S.C. § 1606. Section 1606 requires that "domestic value" is to be used to determine the appraised value. This value is then used to compute the informer's fee pursuant to Title 21's analogue to 19 U.S.C. § 1619. In doing so, DEA regulations provide:

> The custodian shall appraise the *property* to determine the domestic value at the time and place of seizure. The domestic value shall be considered the *retail price* at which such or similar *property* is *freely offered* for sale. 21 C.F.R. § 1316.74 (1975). (Emphasis added.)

*Property* is defined by 21 C.F.R. § 1316.71(c) (1975) to include "a controlled substance."[10] Pursuant to 21 U.S.C. § 881(d) and 965, the informer should therefore receive twenty-five percent of the domestic retail price at which the controlled substance is freely offered for sale.[11] We think the terms *retail* and *freely offered* clearly

---

**5.** Despite hashish's status as a controlled substance, it is still merchandise within the act. *Cf. United States v. One 1937 Hudson Terraplane Coupe Automobile,* 21 F.Supp. 600, 603 (W.D.Ky.1938); 19 U.S.C. § 1401(c) (1970).

**6.** "The court finds that the hashish and the other items were seized under the customs laws as well as the drug laws." District Court Slip Op. at p. 13.

**7.** *Cf. United States v. Commercial Credit Co.,* 286 U.S. 63, 52 S.Ct. 467, 76 L.Ed. 978 (1932); *General Motors Acceptance Corp. v. United States,* 286 U.S. 49, 52 S.Ct. 468, 76 L.Ed. 971 (1932) (no problem with utilization of forfeiture under customs law even though National Prohibition Act applied; government has choice of proceeding under either law).

**8.** Apparently the hashish was destroyed; the destruction would appear to have been carried out by DEA in light of the Reorganization Plan and 21 U.S.C. § 881 (1970).

**9.** We see no need to dismiss this suit for failure to exhaust administrative remedies. Claimant requested the proper parties under Title 21 to pay the informer's fee, the statutory provisions are identical and the regulations promulgated thereunder are similar. To require plaintiff to present his claim again would be to require a futile act.

**10.** The fact that hashish is contraband and not subject to replevin, *Rea v. United States,* 350 U.S. 214, 76 S.Ct. 292, 100 L.Ed. 233 (1956), does not determine whether an informer's fee should be allowed.

**11.** While 19 U.S.C. § 1619 states the fee "may" be paid, the Title 21 analogue, as does § 1619, requires payment if the prerequisites are satisfied. *Wilson v. United States,* 135 F.2d 1005, 1009 (3 Cir. 1943).

preclude the use of street value. Such terms indicate a sale to the consumer which is not prohibited by law. We agree with the district court that a controlled substance sold illegally is not one which is *freely offered*.[12] It is doubtful that Congress in passing the legislation desired to peg an informer's compensation at an illegally obtained price, thereby providing a procedure awarding either directly or indirectly illegal schemes sought to be extinguished. Moreover, the history of the original § 1619 indicates that the informer's fee was designed to turn over part of the government's recovery to the informer, not provide payment generated by other sources.[13] Many of the controlled substances seized will have medical uses,[14] indicating that there will be a domestic value for them as set by pharmaceutical firm purchases.[15] In such cases, the drug informer's fee is akin to fees paid during prohibition for whiskey.[16]

■ Ordinarily, then, the case would be remanded to determine the retail domestic value for legal sales. But hashish is a schedule I substance which is subject to summary seizure and which has no medically determined use. It would seem to follow that there can be no *freely offered* sales. However, such drugs may still have scientific or research uses. 21 C.F.R. § 1312.01 to 13.12.47 (1975). *See generally United States v. Randall,* 20 Crim.L.Rep. (BNA) 2301 (D.C.Super.Ct. Nov. 24, 1976) (use of marihuana to prevent blindness). Schedule I substances may be imported for medical or scientific reasons under certain circumstances. *See* 21 U.S.C. § 952(a)(2) (1970); 21 C.F.R. § 1301.22(a)(9) (1975). As well, persons who properly register may conduct research and instructional activities with schedule I controlled substances. 21 C.F.R. §§ 1301.22(a)(7), (b)(3), (b)(4), (c) (1975); 21 C.F.R. §§ 1301.32(a)(7) & (8) (1975); 21 C.F.R. § 1301.33 (1975). And applications may be taken for bulk manufacture of schedule I substances. 21 C.F.R. § 1301.43

12. Plaintiff's reliance on *United States v. Continental Forwarding Co.,* 463 F.2d 1129, 1133–34, 59 CCPA 178 (1972), and *United States v. Lockwood & Freidin,* 287 F.Supp. 283 (Cust.Ct. 3rd Div.App.1968), is misplaced for the cases are totally inapplicable to this type of illegal sale.

13. Initially, the statute only allowed a fee when there was a "net amount" recovered. *See Wilson v. United States,* 135 F.2d 1005, 1011 (3 Cir. 1943). Since the seized merchandise might be utilized by the government or destroyed instead of being sold, changes were made in the statute to deal with these contingencies, and the fee became in effect equivalent to what a sale could have brought.
This view is further supported by the prior drug import statute. 21 U.S.C. § 183 (1964). It provided that informers would receive one-half of any fine recovered from a person violating the statute and one-half of any bail forfeited in any proceedings thereunder. *United States v. Mon Kee Lee,* 12 F.Supp. 458 (N.D.Cal.1935). The new drug laws were designed to extend marijuana and narcotic drug import controls under the Narcotic Drugs Import and Export Act, H.R. No. 91–1444, 91st Cong., 2d Sess., *reprinted in* [1970] U.S.Code Cong. & Admin. News, pp. 4567, 4639, to other "dangerous drugs," and therefore similar methods of payment of fees seem warranted. Since discretionary payments not pegged to revenues may

already be made as in the old law, 21 U.S.C. § 886 (1970); 21 U.S.C. § 199 (1964), it is preferable to gear these further awards to the recovery or worth in a United States market.

14. *See* 21 U.S.C. § 952(a)(1) (1970) (opium and cocoa leaves); *cf. Turner v. United States,* 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970) (invalidating statutory presumption of knowledge of importation of cocaine since it is manufactured in the United States); *United States v. Barrios,* 457 F.2d 680 (9 Cir. 1970) (alluding to legal import of cocaine and morphine).

15. Of course, if retail value is to be used, it may be difficult to determine what the retail value of cocaine is since it is purchased wholesale and processed. If, however, retail price could not be established, we would presume it would be DEA's policy to utilize wholesale price. The customs laws usually utilize wholesale value. *See also* 19 C.F.R. 162.43 (1975) (does not require on face use of retail or wholesale price).

16. *Wilson v. United States,* 135 F.2d 1005, 1007 (3 Cir. 1943) (fee paid by government for liquor seized); *Gillam v. United States,* 27 F.2d 296, 302 (4 Cir.), *cert. denied,* 278 U.S. 635, 49 S.Ct. 32, 73 L.Ed. 552 (1928) ("[liquor's] sale for industrial and medicinal purposes under legal restriction is permitted, and for these purposes it does have ·value") (dictum).

(1975).[17] Given these limited legal activities, it is conceivable there exists a retail market price for drugs used in such programs.

The district court found that plaintiff offered no evidence of value other than street value. This is true, but we recognize that when this case was tried there was a dearth of authority recognizing that there could be a legal, albeit limited, free market. We think that, since we have now expressed our views in this regard, plaintiff should be afforded the opportunity to present evidence on this point, if he be advised to do so. Accordingly, we affirm the judgment in all respects except that we remand the case with the direction that, upon plaintiff's motion to reopen the proceedings made not later than thirty days after the district court's receipt of our mandate, the district court shall reopen the proceedings, take evidence as to the existence of a legal retail market price for the computation of an informer's fee and enter an amended judgment in accordance with the views expressed herein.

*AFFIRMED AND REMANDED.*

**17.** Pursuant to 21 C.F.R. § 1307.22 (1975), the DEA may deliver drugs forfeited pursuant to 21 U.S.C. § 881 to any department, bureau or agency of the United States or of any state (or conceivably any institution) upon proper application.