**John DOE, Plaintiff–Appellant,**

v.

**The UNITED STATES, Defendant–Appellee.**

**No. 95–5047.**

United States Court of Appeals, Federal Circuit.

Nov. 15, 1996.

Daniel C. Leib and Samuel J. Leib, Los Angeles, CA, argued, for plaintiff-appellant.

Rhonda K. Schnare, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, argued, for defendant-appellee. With her on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Jeanne E. Davidson, Assistant Director.

Before ARCHER, Chief Judge, PLAGER and SCHALL, Circuit Judges.

PLAGER, Circuit Judge.

This case requires us to decide whether the Court of Federal Claims continues to have jurisdiction under the Tucker Act, 28 U.S.C. § 1491 (1994), over an informant's claim for a reward under 19 U.S.C. § 1619 (1994) following certain amendments to that statute in 1986. The Court of Federal Claims is divided on the question. We conclude that after the 1986 amendments the statute, sometimes referred to as the "moiety statute," continues to be "money mandating," and that Tucker Act jurisdiction lies in the Court of Federal Claims over claims arising thereunder. Accordingly, we reverse the trial court's judgment to the contrary, and remand for further proceedings consistent with this decision. We correspondingly vacate the trial court's dismissal of Plaintiff–Appellant John Doe's [1] claim for an accounting of forfeitures, if any, resulting from any original information provided by Appellant. Appellant separately alleged an implied-in-fact contract for a reward; given this record we affirm the trial court's grant of summary judgment to the defendant United States ("Government") on this claim. We also affirm the trial court's dismissal of Appellant's misrepresentation claim since there is no valid contractual cause of action on which to base such a claim.

## BACKGROUND

After Appellant was arrested for drug trafficking, he agreed to provide information to the United States Customs Service ("Customs") and the United States Attorney concerning the illegal importation of drugs, in order to assist the Government's law enforcement efforts. The Government placed Appellant in the Federal Witness Protection Program in exchange for his cooperation. Appellant disclosed his information to a Customs Special Agent and to an Assistant United States Attorney ("AUSA"). Appel-

lant alleges that these officials agreed with Appellant that in exchange for his information, Appellant would receive 25 percent (up to $250,000) of the assets seized by Customs based on original information that Appellant provided.[2] The Government disputes that such a promise was made.

Following the seizure of assets from drug traffickers about whom Appellant provided information to the Government, the Customs Special Agent requested that Appellant receive $250,000 (later reduced to $150,000) for his assistance. The Special Agent in Charge rejected this request on the grounds that Appellant had cooperated only after his arrest for drug smuggling; that Appellant had provided merely corroborative, not original, information for one of the seizures; that his information was not used in obtaining the search warrant leading to another of the seizures; and that his subsequent placement in the Witness Protection Program, and his avoidance of jail time, were substantial compensation for his cooperation.

Appellant filed suit against the Government in the Court of Federal Claims, asserting entitlement to an award under the federal moiety statute, 19 U.S.C. § 1619, and the implementing regulations, 19 C.F.R. §§ 161.11–161.16 (1994). Appellant also alleged that the Government breached an implied-in-fact contract to pay Appellant an award based on the recovery of property resulting from original information provided by Appellant. Appellant also claimed negligent misrepresentation by the Government in allegedly promising him an award, and sought declaratory relief, an accounting of the seizures allegedly resulting from the information he provided to Customs, and damages.

The Court of Federal Claims granted the Government's motion to dismiss the statutory claim, finding that the moiety statute was not "money mandating" and therefore did not

1. Appellant has proceeded before this court and the Court of Federal Claims as "John Doe," to avoid disclosure of his identity. All documents and court files have been placed under seal by an earlier order of this court.

2. Appellant's complaint alleged that he made disclosures to, and received offers from, various

unspecified agents of the Treasury Department, Customs, the Drug Enforcement Agency, and the United States Attorney's Office. However, the Customs Special Agent and AUSA, who together conducted Appellant's first interview, are the only individuals discussed by Appellant or the trial court or revealed in the record.

support Tucker Act jurisdiction over the claim. *Doe v. United States*, 32 Fed. Cl. 472, 474–75 (1994). The trial court granted summary judgment to the Government on the contract claim, on the grounds that Appellant had provided no evidence that the Customs agent and AUSA with whom Appellant dealt had the requisite actual authority to bind the Government to an award. *Id.* at 475. The trial court also dismissed Appellant's claims for an accounting and declaratory relief, finding such relief beyond the trial court's authority to grant because the claims were not appended to a valid contract claim. The trial court likewise dismissed the negligent misrepresentation claim as a tort claim outside its jurisdiction. *Doe*, 32 Fed. Cl. at 473. This appeal followed.

## DISCUSSION

### I. *Tucker Act Jurisdiction of Claims Under 19 U.S.C. § 1619*

■ We accord complete and independent review to the question of whether Appellant's claim for a reward under section 1619 comes within the Court of Federal Claims' jurisdiction under the Tucker Act. *Gould, Inc. v. United States*, 67 F.3d 925, 928 (Fed.Cir. 1995). The Tucker Act provides jurisdiction over any claim "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (1994). For jurisdiction to lie under the Tucker Act, "the allegation must be that the particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 372 F.2d 1002, 1007 (1967). The question is therefore whether section 1619 "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *United States v. Testan*, 424 U.S. 392, 400, 96

S.Ct. 948, 954, 47 L.Ed.2d 114 (1976) (quoting *Eastport*, 372 F.2d at 1009).[3]

Prior to 1986, the federal moiety statute read in relevant part:

Any person not an officer of the United States who ... furnishes to a United States attorney, to the Secretary of the Treasury, or to any Customs officer original information concerning any fraud upon the customs revenue, or a violation of the customs laws or the navigation laws, perpetrated or contemplated, which detection and seizure or information leads to a recovery of any duties withheld, or of any fine, penalty, or forfeiture incurred, may be awarded and paid by the Secretary of the Treasury a compensation of 25 per centum of the net amount recovered, but not to exceed $50,000.

19 U.S.C. § 1619 (1980); Tariff Act of 1930, Pub. No. 361, § 619, 46 Stat. 590, 758. In *Tyson v. United States*, 91 Ct.Cl. 139, 32 F.Supp. 135 (1940), a suit for the informer's fee provided under the Act, the Government argued that because the statute provided that the Secretary "may," rather than "shall," make an award when statutory conditions for recovery are met, the Secretary's decision to deny an award was final and conclusive. As a consequence, the statute would not be "money mandating" and the court would be without Tucker Act jurisdiction to review the decision. *Id.*, 32 F.Supp. at 136. The Court of Claims, this court's predecessor, disagreed. The court reasoned:

Congress did not intend to leave to the caprice or whim of the Secretary an informer's right to the award. It intended to confer upon the informer an absolute right to demand the payment of the award when he had met the conditions precedent thereto laid down by Congress.... [W]hen the information was the first information which the Secretary had had, and when that information led to the recovery of duties, or of a fine, penalty, or forfeiture, then the informer was entitled as of

---

3. As noted above, Appellant's moiety claim also cites Customs regulations implementing section 1619, at 19 C.F.R. §§ 161.11–161.16 (1996). The relevant language of these regulations essentially mirrors that of the amended section 1619, *see* 19 C.F.R. § 161.13, and in any event does not affect our analysis of whether the statute, with which any regulations must comply, is money mandating.

right to the payment of the award, and if the Secretary of the Treasury arbitrarily or capriciously refused to pay it, the informer had the right to file suit in court to compel that payment. This is a Government of laws, not of men.

*Id.* (citations omitted). The court held that Congress conferred on the Secretary jurisdiction to determine the facts, and the Secretary's determination was final and conclusive "subject only to review by the courts to determine whether or not there was any evidence to support his findings or whether or not the proceedings were regular." *Id.* at 137. Thus, "[i]f the Secretary's determination against the claim was supported by no evidence, if it was arbitrary or capricious, or if the proceedings were fatally defective, because, for instance, no opportunity for a hearing had been given the plaintiff, we think a suit would lie in this court to review his determination and to recover the award...." *Id.*

Subsequent cases in the Court of Claims continued to recognize and reflect jurisdiction over section 1619 claims. *E.g., Cornman v. United States*, 187 Ct.Cl. 486, 409 F.2d 230 (1969); *see also id.* 409 F.2d at 237 n. 2 (Collins, J., dissenting); *Lacy v. United States*, 221 Ct.Cl. 526, 607 F.2d 951 (1979); *Allen v. United States*, 229 Ct.Cl. 515 (1981) ("A claim under 19 U.S.C. § 1619 is within our jurisdiction."); *Wilson v. United States*, 135 F.2d 1005, 1009–10 (3d Cir.1943) (construing facially permissive language of pre–1986 version of section 1619 to mandate payment of award when claimant met statutory conditions, and therefore to support Little Tucker Act claim; citing *Tyson*, 32 F.Supp. 135); *Taylor v. United States*, 550 F.2d 983 (4th Cir.1977) (same); *Rickard v. United States*, 11 Cl.Ct. 874 (1987) (same).

█ In concluding that section 1619 was "money mandating," the cases have emphasized that Congress intended an award to be made when a claimant met the statutory conditions. *Tyson*, 32 F.Supp. at 137; *Wilson*, 135 F.2d at 1009. Clearly, the purpose of section 1619 is to establish an incentive for persons with information useful to law enforcement to cooperate with the authorities, and as the Third Circuit observed in *Wilson*,

"[a]n informer would have little incentive to give original information upon occasions at considerable personal risk to officers of the United States if his compensation rested in the absolute discretion, almost one might say, in the whim, of an executive officer." *Wilson*, 135 F.2d at 1009. Accordingly, judicial review was available to ensure that award determinations furthered Congressional policy.

## II. *1986 Amendments to Section 1619*

In 1986, as part of the omnibus Anti–Drug Abuse Act, Congress amended § 1619 to read in relevant part:

> If—[a]ny person who is not an employee or officer of the United States ... (B) furnishes to a United States attorney, the Secretary of the Treasury, or any Customs Officer original information concerning ... (ii) any violation of the customs laws ... which is being, or has been, perpetrated or contemplated by any other person; and (2) such ... information leads to a recovery of ... (B) any fine, penalty, or forfeiture of property incurred; the *Secretary may award and pay such person an amount that does not exceed 25 percent of the net amount so recovered.*

19 U.S.C. § 1619(a) (1994) (emphasis added). *See* Anti–Drug Abuse Act of 1986, Pub.L. No. 99–570, Title III, § 3125, 100 Stat. 3207, 3207–88 (codified at 19 U.S.C. § 1619(a)):

The Government renewed the argument, below and in this court, that Congress, this time by eliminating the previous set-percentage formula for calculating the reward due under section 1619, gave the Secretary unlimited discretion in determining whether to give an award at all, and that the statute was therefore not money mandating. The trial court agreed with the Government, and concluded that the statute is no longer money mandating so as to support Tucker Act jurisdiction.

In so doing, the trial court declined to follow an earlier decision of the Court of Federal Claims, *Lewis v. United States*, 32 Fed. Cl. 59 (1994), which held that the statute continued to be money mandating after the 1986 amendment. The *Lewis* court rea-

soned that the amendment was intended only to provide flexibility in the Secretary's determination of the appropriate reward, not to permit withholding of any reward when the informant met the statutory requirements. The *Lewis* court stated:

> [W]hile the 1986 amendment permits Customs to utilize a sliding scale when determining the appropriate amount of an award for an informant, the statute continues to mandate the payment of some award. . . . As noted above, the 1986 amendment merely attempted to alter the level of incentives offered to informants, and in fact did not alter the wording of the section except to provide the Secretary more leeway as to the exact amount of the reward. In no way can the amendment be interpreted, however, to provide zero compensation for original information. Such an arbitrary interpretation would destroy the informant's monetary incentive and severely curtail the quality and quantity of original information received by Customs. Thus, contrary to [the Government's] assertions, if an informant provides original information and complies with the statute in all other ways, Customs does not possess the discretion to make no award at all.

> Since the history of 19 U.S.C. § 1619 and the established precedent clearly indicate that Customs must provide some level of award to informants under the 1986 amendment, the statute remains sufficiently "money-mandating" [to provide the court with jurisdiction to hear Lewis's claim under the statute].

*Id.* at 64.[4] Another case before the Court of Federal Claims has since concluded, following *Lewis*, that section 1619 continues to require some award and thus remains money mandating. *Freed v. United States*, 34 Fed. Cl. 715, 717–18 (1996).

As an abstract matter, the Government's reading of the statute is not without force. In a not wholly dissimilar situation, our predecessor court concluded that a statute authorizing the award of incentive pay left the decision to the discretion of an executive officer. Because the statute did not mandate any payment, the decision was not subject to review under the Tucker Act. *Adair v. United States*, 227 Ct.Cl. 345, 648 F.2d 1318 (1981). In that case Congress gave the Secretary of Health, Education, and Welfare authority to promulgate regulations defining categories of medical officers who, under terms of the legislation, would qualify for certain incentive payments. Officers who did not meet the terms of the Secretary's regulations sued, claiming a right to the payments. The court held that the discretion granted the Secretary in defining who was to be eligible for the payments precluded a recovery under *Testan.* The court did not find the case sufficiently like *Tyson* to bother citing or discussing that case.

But we do not write on a clean slate, or come to this provision in the law in the abstract. As stated above, the pre–1986 version of section 1619, which provided that the Government "may" pay an award to claimants satisfying the statutory conditions, has long been understood to mandate the payment of an award. In such a situation, Congress may be presumed to have been aware of this construction when it amended the statute in 1986. *See Anthony v. Office of Personnel Management*, 58 F.3d 620, 626 (Fed.Cir.1995). Yet Congress provided no indication in either the statutory language or legislative history that it intended to reject or alter this construction and to render awards wholly discretionary. *Cf.* 28 U.S.C. § 524(c)(1)(C) (establishing Justice Department's Assets Forfeiture Fund for, *inter alia,* "at the discretion of the Attorney General,* the payment of awards for information or assistance leading to a civil or criminal forfeiture involving any Federal agency participating in the Fund") (emphasis added). The legislative history accompanying the changes at issue stated that the amendment

> allow[s] Customs officers to exercise *some discretion* in determining *the percentage* of an informant's award. Under present law, when Customs makes a recovery of prop-

---

**4.** The court went on to stay Lewis's action in order to afford Customs six months in which to render a decision on Lewis's claim. *Lewis,* 32 Fed. Cl. at 65. The court stated that if Customs had not rendered a decision in six months, "the court will need to independently determine whether [Lewis] is entitled to compensation pursuant to 19 U.S.C. § 1619." *Id.* at 66.

erty, or penalties, the person who provided the original information is entitled to an award of 25 percent of the recovered value, but not more than $250,000 (until 1984, this was $50,000). The amendment would *permit an award in a lesser amount up to* the 25 percent/$250,000 maximum depending on the information provided.... The award is only payable after the government has made a recovery based on the information....

H.R.Rep. No. 794, 99th Cong., 2d Sess. 16–17 (1986) (emphasis added). Contrary to the Government's position, Congress did not indicate any intention to give the Secretary absolute discretion to deny an award under the moiety statute when the conditions for award are met. Rather, it is clear that Congress intended only to give the Secretary "some discretion" in making awards of less than 25 percent of the value of the fines, penalties, or forfeited property resulting from the original information provided by an informant. Nowhere did Congress indicate any intention to disturb the longstanding judicial interpretation of the moiety statute as "money mandating." *See Lindahl v. Office of Personnel Management,* 470 U.S. 768, 782–83, 105 S.Ct. 1620, 1628–29, 84 L.Ed.2d 674 (1985) (Congress's failure expressly to repeal prior judicial construction of scope of review of disability determinations creates presumption that Congress intended to embody that construction in amended statute).

The 1986 amendments and their legislative history emphasize Congress's desire to develop "a balanced, coordinated, multifaceted strategy for combating the narcotics drug ... trafficking in the United States," in part by increasing investigations of large drug smuggling networks and increasing funds and resources for drug interdiction. Pub.L. No. 99–570, Title III, §§ 3002, 3003, 100 Stat. 3207, 3207–73 to 3207–74. Such efforts clearly are aided through encouraging citizens to disclose useful information that may assist the investigation of drug trafficking. *See* H.R.Rep. No. 794, 99th Cong., 2d Sess. 3 (1986) ("In the final analysis, the war against drugs ... must involve not just interdiction, but ... a far higher level of citizen participation and awareness."). It is precisely the recognition of Congress's desire to preserve the incentive for such citizen participation that prompted the Court of Claims, in *Tyson* and its progeny, to construe section 1619 as mandating recovery when the statutory conditions are met.

 We therefore conclude that section 1619 continues to require the payment of some award to claimants who have met the statutory conditions for recovery, i.e., who have provided original information involving a violation of the customs or navigation laws that has led to the recovery of a fine, penalty, or property. Contrary to the Government's contention, this satisfies the requirement under *Eastport* that "the particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." *Eastport,* 372 F.2d at 1007. The fact that the Secretary retains some discretion to determine the amount of an award, within prescribed limits, does not preclude the statute from being money mandating. *E.g., Bradley v. United States,* 870 F.2d 1578 (Fed.Cir.1989) (although Government retained broad discretion in determining wage increases under "prevailing rates" legislation, "[i]nasmuch as discretion is not unlimited, the statute must be deemed to be a pay-mandating statute"). The cases cited by the Government to demonstrate that *wholly* discretionary payments do not support Tucker Act claims are inapposite, since in this case, Congress has indicated that the Government lacks such unbounded discretion.[5]

---

5. Our conclusion here does not conflict with our observations concerning section 1619 in *Lewis v. United States,* 70 F.3d 597 (Fed.Cir.1995). There, we affirmed the dismissal of an informant's claim for breach of an alleged implied-in-fact contract grounded upon a purported offer under 19 U.S.C. § 1619 to pay for original information concerning violations of the customs laws. Recognizing that an implied-in-fact contract requires "lack of ambiguity in offer and acceptance," *id.* at 600 (quoting *City of El Centro v. United States,* 922 F.2d 816, 820 (Fed.Cir. 1990)), we found that without a corresponding offer from the Government to pay a specific award, the award provided for in section 1619 was too ambiguous in amount to support by itself a contract claim. *Id.*

*Lewis* did not consider the question presently before us, namely whether amended section 1619, construed in light of precedent and in accordance with Congressional intent, mandates

The *Tyson* court, of course, addressed the pre–1986 statute, which it recognized provided that a person furnishing original information leading to a recovery would be paid "a fixed compensation," i.e., 25 percent of the Government's recovery. The trial court in this case concluded that meaningful judicial review was impossible when a sliding scale was applied to the amount of award, stating that "[c]ourts lack the necessary tools for evaluating the Secretary's exercise of discretion in this context." 32 Fed. Cl. at 474. The Government concurs, arguing that section 1619 provides no standards by which to assess the agency's policy-based determination of an appropriate award. Indeed, the Government suggests that this lack of standards would preclude APA-style review in the district courts as well as the Court of Federal Claims, under the "discretionary function" exception to the APA. *See* 5 U.S.C. § 701(a)(2) (1994) (exempting from APA review a decision left to the discretion of the agency).

■ We are unpersuaded that the lack of statutory guidelines on the appropriate amount to be awarded in a given case renders an award nonjusticiable. In the first place, most of the potential challenges to an award determination—whether information provided by the claimant was original, whether it led to a seizure, whether proper procedures were followed in deciding the claim—will involve straightforward statutory application and record review of fact-finding, complicated only perhaps by accommodating confidentiality concerns surrounding the relevant evidence. Second, other sources of guidance or constraint on the Government's discretion in making awards, such as Treasury regulations or Customs' Fines, Penalties & Forfeitures Handbook, may focus the claims and the trial court's analysis. In this case, for example, Appellant has alleged that the Government failed to follow prescribed procedures in reviewing his claim, and denied him an award in part due to Appellant's arrest for drug smuggling even though the Handbook provides that "[t]he fact that the claimant has been involved in violations of the laws enforced by Customs would not prevent recognition or approval of his claim." Department of the Treasury Office of Commercial Operations, Fines, Penalties, & Forfeitures Handbook (April 1986), at INF–3.[6] Finally, Congress and this court have recognized that the Government has broad discretion to determine the proper amount of an award in order to fashion appropriate incentives for informants to cooperate. Correspondingly, a reviewing court must afford considerable deference to such determinations, and disturb them only when they are based on fact findings not supported by the record or an incorrect interpretation of the applicable law, or are "so ridiculously low as to constitute an affront to congressional intent." *Freed,* 34 Fed. Cl. at 719. We are confident in the ability of the trial court to apply this standard faithfully and justly.

■ We therefore hold that section 1619 continues to provide Tucker Act jurisdiction over claims based on allegations that the claimant has satisfied the requirements of section 1619 and the Secretary has improperly withheld an award. The proper standard of review for the trial court is that enunciated by the *Tyson* court: a decision of the Treasury to deny an award will be upheld unless it is arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, procedurally defective, or unsupported by evidence in the record. *Tyson,* 32 F.Supp. at 136–37. On appeal, we review the judgment of the trial court to determine if

under the prescribed circumstances the payment of money, and thus supports a Tucker Act claim. Although in *Lewis* we commented that the 1986 amendment to section 1619 "enlarged the discretion already given the Secretary of the Treasury in deciding whether to award payments to informants under section 1619," and that "section 1619 does no more than provide that, if all the statutory conditions are met, the Secretary of the Treasury may make an award to an informant of up to a specified amount from government funds," *id.* at 601, we did so in the context of

rejecting Lewis's claim that section 1619 constitutes a sufficiently definite offer that may be accepted by an informant's promise to satisfy in the future the statutory conditions for award. *Id.* at 600–01.

**6.** We of course express no view on the merits of these or other issues disputed by the parties, such as whether Appellant provided the Government with original information.

the court properly applied that standard to the facts of the case.

■ The trial court thus erred in dismissing Appellant's claim for lack of jurisdiction. We reverse the judgment of the Court of Federal Claims on this issue and remand for further proceedings in accordance with this decision. We also vacate the trial court's dismissal for lack of jurisdiction of Appellant's claim for an accounting of the monies allegedly recovered pursuant to original information provided by Appellant. If Appellant is able to prove below that he met the statutory conditions for recovery under section 1619, then the trial court in the exercise of its jurisdiction may order the Government, if needed, to render an accounting of the seizures resulting from Appellant's information. *Klamath & Modoc Tribes & Yahooskin Band of Snake Indians v. United States,* 174 Ct.Cl. 483, 490–91 (1966); *see Florida Keys Aqueduct Auth. v. United States,* 231 Ct.Cl. 911 (1982) (Court of Claims has jurisdiction over inartfully pleaded claim for declaratory judgment that actually sought determination of amortization credit as preliminary to computation of money damages due.). (Some or all of the relevant information may be disclosed in any further discovery proceedings conducted between the parties on remand. *See Klamath,* 174 Ct.Cl. at 491–92.)

### III. *Breach of Implied Contract Claim*

Appellant's complaint separately alleged that the Government had breached an implied-in-fact contract with Appellant under which the Government promised to pay for the information Appellant provided that led to recovery of property by the Government. The trial court granted summary judgment to the Government on this count, holding that Appellant had failed to raise a material fact issue as to a necessary element of an implied-in-fact contract claim, namely, that the Customs Special Agent and AUSA whom Appellant asserted promised him payment for his information had actual authority to bind the Government to such an award. *Doe,* 32 Fed. Cl. at 475.

■ Absent actual authority on the part of the Government's agent to bind the Government in contract, no binding contract can

exist, regardless of the agent's representations. *See Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 383, 68 S.Ct. 1, 2–3, 92 L.Ed. 10 (1947) (those who contract with the Government bear the risk of having accurately ascertained that the Government's representative acts with actual authority to bind the Government); *City of El Centro v. United States,* 922 F.2d 816, 820 (Fed.Cir.1990) (Government representative must have actual authority to bind the Government in contract, to support implied-in-fact contract claim); *Allen v. United States,* 229 Ct.Cl. 515, 515 (1981) (granting summary judgment for Government on contract claim by informants on grounds that DEA agents promising reward for information did not have actual authority to bind Government to such promise). We review the trial court's grant of summary judgment to determine whether there were no genuine issues of material fact in dispute, and whether the court correctly applied the law to the undisputed facts. Fed. R.Civ.P. 56; *Ortho Pharmaceutical Corp. v. Genetics Inst., Inc.,* 52 F.3d 1026, 1033 (Fed. Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 274, 133 L.Ed.2d 195 (1995).

Appellant argues that section 1619 and Customs' implementing regulations provide those officials all the authority that is needed to bind the Government to fulfill a promised award. Title 19 C.F.R. § 161.14 provides that "[a]ny Customs officer who receives information shall advise the informant that, in the event of a recovery, he may be entitled to compensation." Appellant argues that "[b]ecause the code of federal regulations [section 161.14] requires that Customs Agents make the informant aware of rewards [under 19 U.S.C. § 1619], the Government has vested such agents with the authority to convey the reward offer."

■ Appellant is incorrect. The statute grants authority to the Secretary to bind the Government, 19 U.S.C. § 1619(a), and the Government's undisputed evidence indicates that the Secretary has delegated that authority to the Customs Commissioner and ultimately to the Director of Customs' International Trade Compliance Division. The regulations cited by Appellant do not estab-

lish actual authority in any other agent or entity, and, contrary to Appellant's assertion, the mere fact of requiring Customs officers receiving information to advise informants of possible eligibility for award is insufficient to create such authority. *Cf. Lewis v. United States*, 70 F.3d 597 (Fed.Cir. 1995) (rejecting attempt to assert contract terms based on the language of section 1619, concluding that language of section 1619 not sufficiently definite to support contract).

Appellant has not shown that he entered into a contract with the International Trade Compliance Director, or created a material fact dispute on that issue. Nor has he asserted that the Customs Special Agent or AUSA with whom he dealt had implied actual authority to enter into contracts for informant awards. See *H. Landau & Co. v. United States*, 886 F.2d 322, 324 (Fed.Cir. 1989) ("Although apparent authority will not suffice to hold the government bound by the acts of its agents, implied actual authority, like expressed actual authority, will suffice.") (citation omitted). No allegation was made, nor do the facts suggest anything that would support an allegation, that "such authority [to make binding contracts for rewards] is considered to be an integral part of the duties assigned to [customs agents or AUSAs]." *Id.*; *see also Cruz–Pagan v. United States*, 35 Fed. Cl. 59, 60–61 (1996) (indicating that Government affidavit that DEA agent did not have contracting authority to enter into award agreement was insufficient to support summary judgment, because "in appropriate factual settings actual authority can be implied and an express grant of authority is not necessary"). Accordingly, we affirm the trial court's grant of summary judgment on Appellant's breach of contract claim.

We likewise affirm the trial court's dismissal of Appellant's negligent misrepresentation claim. Appellant's complaint asserted that the Government's representations concerning a reward were false, lacked reasonable grounds for belief, and were intended to induce reliance by Appellant. The trial court concluded that this claim sounded in tort and

was therefore outside its jurisdiction. *Doe*, 32 Fed. Cl. at 473.

Appellant agrees that the Tucker Act excludes tort claims such as negligent misrepresentation from the Court of Federal Claims' jurisdiction. He asserts, however, that "[w]hen privity of contract exists between the parties, and the misrepresentation claim is so *inextricably connected* to the contract at issue," the Court of Federal Claims has jurisdiction over the misrepresentation claim, citing *Edwards v. United States*, 19 Cl.Ct. 663 (1990). However, no privity of contract existed between Appellant and the Government because no actual contracting authority resided in the agents dealing with Appellant. That the alleged negligent misrepresentations at issue purportedly included misrepresentations about the agents' contracting authority of course does not change that fact. Accordingly, the Court of Federal Claims lacked jurisdiction over Appellant's negligent misrepresentation claim, and properly dismissed it.

### CONCLUSION

For the foregoing reasons, we affirm the trial court's dismissal of Appellant's breach of contract and misrepresentation claims. We reverse the trial court's dismissal of Appellant's statutory claims, vacate the dismissal of the accounting claims, and remand for further proceedings consistent with this opinion.

### COSTS

Each party to bear its own costs.

*AFFIRMED–IN–PART, REVERSED–IN–PART, VACATED–IN–PART, AND REMANDED.*