**John DOE [1], Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 93–589C.

United States Court of Federal Claims.

Aug. 21, 2000.

---

1. The names of certain individuals have been

changed or omitted in order to protect both

John Doe, plaintiff, pro se.

Lara Levinson, Department of Justice, Washington, D.C., with whom were Acting

their's and the plaintiff's identity.

Assistant Attorney General David W. Ogden, Director David M. Cohen, and Deputy Director Jeanne E. Davidson, for defendant.

## OPINION

BRUGGINK, Judge.

This case is before the court on cross-motions for summary judgment. Plaintiff John Doe alleges that he acted as a confidential informant to officers of the United States Customs Service (Customs), providing them with original information related to traffic in illegal narcotics. He claims that the information he provided led to the seizure of over $1 million in cash from a Southern California storage locker. The government retained possession of this money following appropriate forfeiture proceedings. Doe argues that he is entitled by law to receive a portion of this money as an award in exchange for having provided the information that allegedly led to the seizure. He relies on 19 U.S.C. § 1619 (1994) (Section 1619), which authorizes payment of awards to informants in certain circumstances. The action was dismissed initially, this court holding that Section 1619 was not "money-mandating." *See Doe v. United States*, 32 Fed.Cl. 472, 473 (1994). The Federal Circuit reversed and remanded, holding that an award under Section 1619 was not discretionary. *See Doe v. United States*, 100 F.3d 1576, 1578 (Fed.Cir. 1996) (*reh'g denied, suggestion for reh'g en banc declined*, March 3, 1997). After remand, defendant advances a new argument for why Section 1619 does not apply under these circumstances. Because plaintiff has no other grounds on which to base his claim for an award, defendant moves for summary judgment. Plaintiff has cross-moved for summary judgment. After extensive briefing the court concludes that both parties' motions for summary judgment must be denied.[2]

## FACTUAL BACKGROUND

Plaintiff was arrested on narcotics trafficking charges. Special Agent X of the United

**2.** Plaintiff is in the Witness Protection Program and due to the attendant constraints placed upon him, no formal oral argument was held.

States Customs Service and former Assistant United States Attorney Y coordinated the arrest and conducted the initial interrogation. Because of plaintiff's involvement with suspect one, a large scale drug trafficker, Special Agent X hoped that his arrest would lead to the use of plaintiff as an informant.

Plaintiff contends that he provided information to X and Y regarding, among others, suspect one, suspect two, suspect three, and suspect four. Subsequently, the suspect one investigation led to the seizure and forfeiture of approximately $1,600,000 from a Southern California storage locker owned by suspect four. The application for the search warrant of the storage locker cited violations of 21 U.S.C §§ 841(a)(1), 846, 952, and 963 (1994). Plaintiff was identified in the search warrant affidavit involving suspect four, and Special Agent X admits that plaintiff was one of two confidential informants used in the suspect four seizure. Moreover, at some later time approximately $3,600,000 was seized from suspect three. Although defendant disputes the allegation, plaintiff contends that the information he gave was original within the meaning of Section 1619.[3]

Plaintiff applied to Customs for a moiety award and was turned down. He then filed his complaint in this court, seeking recovery under several different theories, including: (1) breach of an alleged contract to pay a moiety; (2) negligent misrepresentation; and (3) a statutory right to a reward pursuant to Section 1619. Plaintiff also sought a judicial declaration of his rights vis-a-vis the Treasury Department, and an accounting of other seizures precipitated by the information he provided.

This court granted defendant's motion for summary judgment on plaintiff's contract claim and dismissed plaintiff's remaining claims. *See Doe v. United States*, 32 Fed.Cl. 472, 473 (1994). The Federal Circuit affirmed the dismissal of plaintiff's contract and misrepresentation claims, but reversed the dismissal of his statutory claim. *See Doe v. United States*, 100 F.3d 1576, 1578 (Fed. Cir.1996) (*reh'g denied, suggestion for reh'g en banc declined*, March 3, 1997). The Federal Circuit found that Section 1619 was a "money mandating" statute, and this court therefore had jurisdiction over such claims pursuant to 28 U.S.C. § 1491(a)(1). *See id.* The Federal Circuit also vacated the dismissal of plaintiff's claims for a declaration of rights and an accounting. *See id.*

■ In response to the remand of the case, defendant now moves for summary judgment under a different legal theory. Defendant argues that the seizure of the cash was effected under drug laws, 21 U.S.C. §§ 841(a)(1), 846, 952, and 963 not the Customs laws, and that therefore, by operation of 19 U.S.C. § 1600 (1994) (Section 1600), Section 1619 does not apply. Defendant argues that plaintiff's only avenue for obtaining an award is to apply to the Attorney General for an award pursuant to 21 U.S.C. § 886(a). Because that Section has been held not to be money mandating, *see Allen v. United States*, 229 Ct.Cl. 515, 1981 WL 22043 (1981), it argues that no ground for relief exists.

After an initial round of briefing, the court concluded that Customs' practice in dealing with awards was relevant to the construction of Section 1600. The court therefore directed Customs, pursuant to 28 U.S.C. § 2507(a), to notify the court, in verified form, whether it had at any time after January 1, 1992 paid moieties or rewards under Section 1619 in cases in which the seizure was "pursuant to" the drug laws. The court also directed the agency to identify the number of such payments, and the legal authority under which they were made. The agency, however, conducted a search much more limited in scope than that directed by the court.[4] Customs searched files dated January 1, 1992 to the present for any seizures effected solely pursuant to the drug laws. As a result of that

---

3. Plaintiff states that "[w]hen [Customs Supervisor X] called me, he informed me that based on my original information and on the surveillance that I performed with [Customs Special Agent X], Customs raided [the] warehouse which I told them about and seized over $1 million in cash." Pl. Br., May 23, 1999 at 3.

4. The court sought data on all awards paid under Section 1619 whenever the warrant referenced the drug laws. The agency, however, limited its search to instances in which Customs awarded moieties to informants when the warrant cited *solely* the drug laws.

search, Customs found four instances, out of 331, in which it paid moieties under Section 1619 for seizures made solely pursuant to the drug laws. It urges the court to view these as anomalous.

Plaintiff's moiety claim under Section 1619, along with his claim for an accounting, are now before the court on cross-motions for summary judgment. The motions are fully briefed, and no further argument is deemed necessary.

## DISCUSSION

Initially, the court notes that the demands for an accounting and for a declaration of rights, standing alone, are not within the court's power to grant. These are equitable remedies that can only survive as appendages to some other valid cause of action. *See United States v. King,* 395 U.S. 1, 4–5, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). Plaintiff's ability to obtain this relief, in other words, hinges on the validity of his claim for money under Section 1619.

Section 1619 provides in relevant part:

Award of compensation to informers

(a) In general

If—

> (1) any person who is not an employee or officer of the United States —
>
>    ....
>
> (B) furnishes to a United States attorney, the Secretary of the Treasury, or any customs officer original information concerning —
>
>    ....
>
> (ii) any violation of customs laws ... and
>
> (2) such ... information leads to a recovery of —
>
> (B) any ... forfeiture of property

the Secretary may award and pay such person an amount that does not exceed 25 percent of the net amount so recovered.

19 U.S.C. § 1619.

Defendant argues that Section 1619 does not apply, however, because the Customs officers who seized the cash at issue here were acting exclusively pursuant to the drug laws, set out in Title 21 of the Code, and not

the customs laws, set out in Title 19. Defendant contends that this distinction is fatal to plaintiff's claim, because Section 1600 places limits on the applicability of Section 1619's award procedures in cases where Customs officers seize property pursuant to the drug laws (or any other non-Customs law that may be enforced by Customs officers).

Section 1600, entitled "Application of the customs laws to other seizures by customs officers," provides that "[t]he procedures set forth in sections 1602 through 1619 of this title shall apply to seizures of any property effected by customs officers under any law enforced or administered by the Customs Service unless such law specifies different procedures." 19 U.S.C. § 1600. Presumptively then, Customs' (mandatory) award procedures apply here, because the seizure was effected by Customs agents. Defendant's defense focuses on the exception, however, for situations—such as the present case—in which the non-Customs laws being enforced "specif[y] different procedures" for awarding informants. Defendant argues that because Title 21 of the Code sets out the nation's drug laws, and because Doe's information was used to seize cash pursuant to drug laws set out in 21 U.S.C. §§ 841(a)(1), 846, 952 and 963, Doe must look to the award procedures specified elsewhere in Title 21, specifically 21 U.S.C. § 886(a) (Section 886(a)), if he wishes to be compensated for the information he provided.

Defendant argues that Section 886(a) specifies "different procedures" than those contemplated in Section 1600. The former section provides in pertinent part that:

> The Attorney General is authorized to pay any person, from funds appropriated for the Drug Enforcement Administration, for information concerning a violation of this subchapter, such sum or sums of money as he may deem appropriate, without reference to any moieties or rewards to which such person may otherwise be entitled by law.

21 U.S.C. § 886(a).

The drug laws thus, broadly speaking, have their own procedure for awards. Defendant's argument, therefore, is that Section

1600's reference to other procedures embraces Section 886. In addition, defendant also cites 21 U.S.C. § 881(d) and the 1979 amendments to that section to support its position. In pertinent part, it provides:

> The provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws; the disposition of such property or the proceeds from the sale thereof; the remission or mitigation of such forfeitures; and the compromise of claims shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under any of the provisions of this subchapter, insofar as applicable and not inconsistent with the provisions hereof; except that such duties as are imposed upon the customs officer or any other person with respect to the seizures and forfeitures of property under this subchapter by such officers, agents or other persons as may be authorized or designated for that purpose by the Attorney General, except to the extent that such duties arise from seizures and forfeitures effected by any customs officer.

21 U.S.C. § 881(d). In sum, this section directs the Drug Enforcement Administration (DEA), in the circumstances listed in the section, to follow the customs laws regarding the procedures for seizures and forfeitures that occur pursuant to the drug laws.

In a superficial way, then, Sections 1600 and 881(d) appear to operate as opposing mirrors. Section 1600 directs Customs agents to apply the procedures of the drug laws while Section 881(d) directs DEA agents to procedures in the customs laws when they effect seizures pursuant to the drug laws. Defendant points to this apparent anomaly because of an earlier change in the wording of Section 881(d). Prior to 1979, Section 881 also included language that explicitly referred the DEA to Customs procedures for awarding compensation to informers. *See* 21 U.S.C. § 881(d) (1976). In 1979, however, this section was amended to its current version, which no longer incorporates Customs practice as to awards. Defendant argues that by explicitly withdrawing any reference to awards to informers, Congress intended that Section 1619 should not be used as the applicable award statute when Customs agents enforce drug laws.

Defendant's argument is flawed in two respects. First, Section 1600 and Section 886, read together, do not preclude Customs from issuing an award to an informant pursuant to Section 1619 in a case in which Customs officers enforce the drug laws. Section 1619 applies when the law being enforced by Customs officers does not "specif[y] different procedures." Section 1600. Section 886(a), the section cited by defendant as "specif[ying] different procedures," indicates that the discretionary Attorney General's award is available, "notwithstanding any awards or moieties to which the informant may otherwise be entitled by law." In other words, Section 886(a) contemplates that an informer may be entitled to two different statutory awards in exchange for providing the same information regarding violations of the drug laws. Section 886(a) thus does not necessarily displace another award. Section 1600 only ousts customs procedures if the procedures contained in the non-customs laws that the agents are enforcing are "different." The court interprets the word "different" here to mean different and incompatible, i.e., that the two procedures could not co-exist. Here, there is no necessary incompatibility.

Second, defendant's interpretation of the statutory scheme is inconsistent with the legislative history of the 1979 amendment to 21 U.S.C. § 881(d) and the legislative history of both the 1984 and 1986 amendments to 19 U.S.C. § 1619. In 1984 Congress amended Section 1619 to provide increased amounts of rewards to informants who provide the government with information that leads to arrests and seizures resulting from violations of federal law. Prior to 1984, the maximum allowable amount of an award to an informant was $50,000. In 1984, in the context of the "Trade and Tariff Act of 1984," Congress increased the maximum allowable award payment to $250,000. *See* Trade and Tariff Act of 1984, Pub.L. No. 98–573, Title II, § 212, 98 Stat. 2056, 2988 (codified at 19 U.S.C. § 1619(c)). This change originated with House Bill 4901, entitled the "Comprehensive Drug Penalty Act of 1984." The title of the

bill thus clearly indicates that Congress understood these Customs awards would be used in drug-related cases. In providing a purpose and summary of House Bill 4901, the Committee on Ways and Means wrote that:

Title II, which is under the jurisdiction of the Committee on Ways and Means, amends the Tariff Act of 1930 to provide for a more streamlined approach for handling civil forfeitures and to expand the arrest authority of customs officers.

. . . .

Finally, the bill would increase the compensation level which can be paid to informers from $50,000 to $250,000.

H.R.Rep. No. 98–845, Part 2, 98th Cong., 2d Sess. 1–2 (1984).

The House Committee on the Judiciary also explained that Section 212 of House Bill 4901 would:

Mak[e] conforming changes and rais[e] the maximum informant's award contained in section 619 of the Tariff Act from $50,000 to $250,000. The 25% award [would] only [be] paid if the government ma[de] a tangible recovery of property from the information provided.

H.R.Rep. No. 98–845, Part 1, 98th Cong., 2d Sess. 27 (1984). In further explaining the need for the change the committee stated that, "[m]any informants take great risks in reporting violations of Federal Law to the Federal Government. The $50,000 amount has not been raised since 1922." *See id.*

During the floor debate, several Congressmen explained the purpose and nature of the revisions contained in House Bill 4901. Congressman Gibbons from Florida stated:

I rise in support of H.R. 4901, a bill to amend the Controlled Substances Act, the Controlled Substances Import and Export Act, and the Tariff Act of 1930 to improve forfeiture provision and strengthen penalties for controlled substance offenses. This bill is desperately needed by our law enforcement officers to attack one of the most serious problems facing our nation today-the increased trafficking in narcotics which is threatening the youth of America. I commend the gentlemen from New Jersey for the excellent work of the Commit-

tee on the Judiciary in putting together this excellent and extremely important piece of legislation to address this problem.

130 Cong..Rec. 18, 24805 (1984).

In addition, Congressman Gilman stated:

Mr. Speaker, I rise in support of H.R. 4901, the Comprehensive Drug Penalty Act of 1984, and I urge my colleagues to support this urgently needed legislation.

. . . .

[An] important aspect of this legislation would increase the narcotics law enforcement activities of the U.S. Customs Service. . . .

Finally, H.R. 4901 would increase compensation to informers from $50,000 to $250,000, while retaining the current legal limit of such payments to 25 percent of the net proceeds.

130 Cong. Rec. 18, 24807 (1984). It is clear that Congress assumed that Customs, in pursuing a more active role in drug enforcement, would be using its own moiety procedures.

Again, when Congress amended Section 1619 in 1986, by inserting language allowing a sliding scale of awards "of not more than 25 percent," it once again did so in the context of an omnibus drug enforcement act, confirming its intent that the award provisions of Section 1619 were independent, even in drug-related seizures, of the separate award provisions of the drug laws. *See* The Anti–Drug Abuse Act of 1986, P.L. 99–570, § 3125, 100 Stat. 3207, 3207–88 (codified at 19 U.S.C. § 1619(a)).

Defendant counters with its own argument drawn from the legislative history of the 1979 amendment to 21 U.S.C. § 881(d). It points to the following excerpt from a Senate Report regarding the 1979 change in the statute:

The exclusion of mandatory payment of moieties for seizures of contraband controlled substances, is accomplished through Section 17 of the bill, amending Section 511(d) of the Controlled Substances Act. Section 511(d) of the Controlled Substances Act (21 U.S.C. § 881(d)) makes applicable 19 U.S.C. § 1619, which provides in substance that informants who furnish information leading to the seizure

and forfeiture of goods under the customs laws are entitled to compensation of up to 25 percent of the value of the forfeited goods, not to exceed $50,000.

The Drug Enforcement Administration and the Bureau of Customs have declined to pay awards to informants under this provision for contraband controlled substances, because they have no legitimate commercial value. While small quantities of contraband controlled substances may be retained by the Government from time to time for research, by and large all contraband drugs are destroyed. However, claims for compensation have been filed under 21 U.S.C. 881, and the U.S. District Courts are not certain as to the Congressional intent in making payments under the statute for contraband goods that have no value except on the illicit market .... Therefore, it is essential that the Congress clarify this issue. The Drug Enforcement Administration will still be able to provide payment of awards to informants under the general authority of section 516(a) of the Act (21 U.S.C. 886(a)) which states: (a) The Attorney General is authorized to pay any person, from funds appropriated for the Bureau of Narcotics and Dangerous Drugs (now the Drug Enforcement Administration by Reorganization Plan No. 2 of 1973), for information concerning a violation of this subchapter, such sum or sums of money as he may deem appropriate, without reference to any moieties or rewards to which such person may otherwise be entitled by law. A change in 21 U.S.C. 881 is fully justified; the Government should not be paying a moiety for goods having no legitimate value.

S.Rep. No.173, 96th Cong., 1st Sess. 36–37 (1979), U.S.Code Cong. & Admin.News 1979, pp. 2003, 2039, 2040.

From this excerpt defendant argues that Congress did not intend that Section 1619 ever be used as the applicable award statute for an informant who gave information to Customs regarding the possible violation of drug laws. Far from it. First, as this excerpt demonstrates, this amendment was directed only to the DEA's award procedures in cases in which the DEA seized certain property. The amendment did not affect customs laws. Second, the only thing about awards under Title 21 that this legislative history makes clear is that Congress did not intend awards under Section 886(a) routinely to be given based on the seizure of contraband. Payments under Section 1619 are tied to the value of the property seized, whereas under Section 886(a) no seizure need to have taken place for an informant to get an award. Therefore, Congress apparently saw Section 886(a) as the preferable statute for DEA agents to follow when awarding compensation to informers whose information lead to the seizure of contraband. In any event, in the case at hand, plaintiff seeks an award for giving information which led to the seizure of money, not contraband. Therefore, even if Section 881(d) was applicable to a situation in which Customs agents enforce drug laws, application of Section 1619 in this particular case would not contravene the expressed Congressional intent behind the 1979 amendment to 21 U.S.C. § 881(d).

Finally, directing plaintiff to appeal to the discretion of the Attorney General under Section 881 would be inconsistent with one of the bases for the Federal Circuit's ruling that Section 1619 is a "money-mandating" statute. *See Doe v. United States,* 100 F.3d 1576, 1578 (Fed.Cir.1996) (*reh'g denied, suggestion for reh'g en banc declined,* March 3, 1997). The Federal Circuit found that it was the Congressional intent that the Secretary of the Treasury be forced to pay some amount of awards to informants who met the statutory requirements of Section 1619. The Federal Circuit taught that:

The 1986 amendments and their legislative history emphasize Congress's desire to develop "a balanced, coordinated, multifaceted strategy for combating the narcotics drug ... trafficking in the United States," in part by increasing investigations of large drug smuggling networks and increasing funds and resources for drug interdiction.

*Id.* (citing Pub.L. No. 99–570, Title III §§ 3002, 3003, 100 Stat. 3207–73 to 3207–74). The court continued:

Such efforts clearly are aided through encouraging citizens to disclose useful infor-

mation that may assist the investigation of drug trafficking. See H.R.Rep. No. 794, 99th Cong., 2d Sess. 3 (1986) ("In the final analysis, the war against drugs ... must involve not just interdiction, but ... a far higher level of citizen participation and awareness."). It is precisely the recognition of Congress's desire to preserve the incentive for such citizen participation that prompted the Court of Claims, in *Tyson*, [91 Ct.Cl. 139, 32 F.Supp. 135 (1940)] and its progeny, to construe section 1619 as mandating recovery when the statutory conditions are met.

100 F.3d at 1582.

Under the defendant's interpretation of the statutory scheme, Customs officers could seek cooperation from an informant and then avoid Section 1619 simply by citing the drug laws instead of, or in addition to, the customs laws in the warrant application. Payments under the two statutes come from two distinct funds, each under the control of a different agency. Payments under Section 1619 are tied to the value of the property seized, and "unless otherwise provided by law ... [are] paid out of appropriations available for the collection of the customs revenue." 19 U.S.C. § 1619(d) (1994). Payments under Section 886(a), in contrast, issue from the Attorney General, are discretionary, do not require that a seizure have taken place, and are paid "from funds appropriated for the Drug Enforcement Administration." 21 U.S.C. § 886(a) (1994). An informant working exclusively with Customs would be forced to apply to the Attorney General for DEA appropriated funds, even though he may never have rendered assistance to the DEA.

This result is not consistent with other Court of Federal Claims decisions. *See, e.g., Nicolas v. United States*, 35 Fed.Cl. 387, 391–92 (1996); *Sarlund v. United States*, 39 Fed.Cl. 803, 805–07 (1998); *Emmens v. United States*, 44 Fed.Cl. 524, 528 (1999). However, the court respectfully disagrees with those opinions. Defendant's interpretation does not comport with a plain reading of the statutes and thwarts the Congressional intent. Therefore, the court denies defendant's motion for summary judgment.

■ Plaintiff has cross-moved for summary judgment, alleging that he is entitled to receive an award pursuant to Section 1619 based on what he considers to be original information that he provided to customs, and that he is entitled to receive an accounting from Customs of other seizures precipitated by the information he provided. From the outset defendant has contested plaintiff's entitlement on the grounds that his information was not "original" within the meaning of the statute. *See* August 16, 1999 Transcript, 19. Defendant submitted the affidavit of Customs Special Agent X, who alleges that plaintiff did not provide Customs with the original information that led to the seizure and ultimate forfeiture of $1.6 million from the storage locker, but that the original information was provided by a different confidential informant. *See* Def. Br., May 30, 1997, App. 3. Because the question of originality is material and contested, and because plaintiff's request for an accounting is premature pending resolution of the originality of his information, summary judgment is not possible. Accordingly the plaintiff is directed to contact the court and arrange a telephonic status conference to discuss further proceedings.

## CONCLUSION

The parties' cross-motions for summary judgment are denied.